**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
|  | ) |
| Plaintiff(s), | ) |
|  | ) |
| vs. | ) |
|  | ) |
| ANC VISTA I, LLC, et al, | ) |
|  | ) |
| Defendant(s). | ) |

Case No. 2:14-cv-00840-JCM-NJK

**ORDER DENYING MOTION TO QUASH**

(Docket No. 16)

Pending before the Court is Plaintiff's motion to quash a subpoena.  Docket No. 16.  A response in opposition and a reply were filed.  Docket Nos. 23, 36.  The Court then issued an order allowing the parties to file supplemental materials, *see* Docket No. 41, which the Court has now received.  Docket Nos. 47-48, 51.  The Court held a hearing on the motion on January 8, 2015.  *See* Docket No. 55.[1]  For the reasons discussed below, the motion to quash is hereby **DENIED**.

I.       **BACKGROUND**

This is a deficiency action regarding property at 4259 S. Maryland Pkwy., Las Vegas, Nevada ("the Property").  As part of this action, Defendants brought a counterclaim alleging a breach of the covenant of good faith and fair dealing.  Docket No. 8.  As summarized by United States District Judge James C. Mahan, the counterclaim is based on the following allegations that Plaintiff manufactured a deficiency action:

---

[1] Citation to the recording of the hearing will refer to "Hearing Tr."

defendants claim that plaintiff "conducted itself in a manner designed to maximize a deficiency against [defendants]," namely by "arbitrarily disregard[ing] the established opinions of value upon maturity and shop[ping] for a lower opinion of value from an outside appraiser." Defendants contend that plaintiff did so in order to seek "double recovery of the Loan obligation." Defendants state that "the fair market value of the property as of the sale date exceeded the alleged loan indebtedness as of that same sale date."

Docket No. 15 at 4 (internal citations omitted); *see also* Docket No. 23 at 2. Judge Mahan held that, taking the allegations as true, "defendants have sufficiently alleged a breach of the covenant of good faith and fair dealing." Docket No. 15 at 4.

In dispute currently is whether Defendants are entitled to discovery of a 2012 appraisal performed by Gordon Garff. That appraisal is within the scope of a subpoena served on Mr. Garff seeking, *inter alia*, "all documents comprising or referring to valuation of the Property." *See* Docket No. 16 at 15. Plaintiff argues that the 2012 appraisal is protected pursuant to Rule 26(b)(4)(D).[2]

Plaintiff has already produced two appraisals by Mr. Garff, one from 2009 and another from 2010. *See* Docket No. 23 at 4. Plaintiff has also disclosed two appraisals from its testifying expert, Robert Dietrich, both from 2013. *See* Miller Decl. at ¶¶ 11-12 (Docket No. 48).

## II.   ANALYSIS

Rule 45 provides that a court must grant a timely motion to quash or modify a subpoena that requires disclosure of privileged or other protected matter. *See* Rule 45(d)(3)(A).[3] Although Mr. Garff himself appears not to have objected to the subpoena, Plaintiff filed a motion to quash or modify the subpoena. The pending dispute is whether the Court should quash or modify the subpoena served on Mr. Garff to prevent the production of documents that Plaintiff contends are protected by Rule 26(b)(4)(D)'s provisions generally prohibiting discovery on the facts known or opinions held by a non-testifying expert.

---

[2] All references herein to "Rules" refer to the Federal Rules of Civil Procedure.

[3] The background section of Defendants' opposition brief refers to Plaintiff's "untimely" objections, but Defendants fail to argue–or cite to any authority providing that–any such untimeliness should result in a waiver of those objections. *See* Docket No. 23 at 6-7. To the extent Defendants were attempting to make such an argument, it was insufficiently developed and the Court will not consider it. *See, e.g.*, *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

2

Because the work-product doctrine is a procedural immunity rather than an evidentiary privilege, federal courts apply federal law even when sitting in diversity. *See, e.g.*, *Metzler Contracting Co. LLC v. Stephens*, 642 F. Supp. 2d 1192, 1204 (D. Haw. 2009) (collecting cases). The federal rules provide that a party may not generally obtain discovery into the facts known or opinions held by an expert retained in anticipation of litigation who is not expected to testify at trial. *See* Rule 26(b)(4)(D).[4] The party asserting an applicable protection bears the initial burden of showing that the protection applies. *See, e.g.*, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 634 (D. Nev. 2013). The party seeking protection under Rule 26(b)(4)(D) must show that the documents at issue were created by the non-testifying expert in anticipation of litigation. *See, e.g.*, *U.S. Inspection Servs., Inc. v. NL Eng'd Solutions, LLC*, 268 F.R.D. 614, 617-18 (N.D. Cal. 2010). In determining whether a document was prepared in anticipation of litigation, courts analyze the totality of the circumstances to determine if the document was created "because of" litigation. *See, e.g.*, *id.* at 619-20.[5] To do so, courts weigh factors such as the timing of the retention of the non-testifying expert and the existence of other evidence, such as supporting affidavits and engagement letters. *Id.* at 619.

If that initial burden has been met, the party seeking discovery from the non-testifying expert has the heavy burden to prove the existence of exceptional circumstances. *See, e.g.*, *id.* at 617. Nonetheless, Rule 26(b)(4)(D) "is not an 'impenetrable fortress' against discovery and parties seeking discovery can make a showing of exceptional circumstances when there is no practicable alternative by which they can obtain the information." *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 207 (S.D. Ind. 1993).

---

[4] Some of the case law discussed herein refers to former Rule 26(b)(4)(B), which was renumbered as Rule 26(b)(4)(D) in 2010. *See Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 1402337, *4 n.6 (N.D. Cal. Apr. 5, 2013). "The 2010 amendments to Rule 26 did not modify present Rule 26(b)(4)(D) in any substantive way." *Yeda Research & Development Co. v. Abbott GmbH & Co.*, 292 F.R.D. 97, 107 n.12 (D.D.C. 2013).

[5] The Ninth Circuit applies this test in the context of "dual purpose" documents for which protection is sought pursuant to Rule 26(b)(3). *See In re Grand Jury Subpoena*, 357 F.3d 900, 907-08 (9th Cir. 2004). The same analysis applies to the phrase "in anticipation of litigation" under Rule 26(b)(4)(D). *See Klee v. Whirlpool Corp.*, 251 F.R.D. 507, 511-12 n.3 (S.D. Cal. 2006); *see also U.S. Inspection Services*, 268 F.R.D. at 618 n.5.

1

A.     Scope of Documents

2       The Court notes as a threshold matter that the scope of documents at issue in the pending motion
3   is unclear.  In its opening motion, Plaintiff refers vaguely to preventing discovery of Mr. Garff's "work as
4   a non-testifying/consulting expert" and "any communications" he had with Plaintiff and its counsel in that
5   capacity.  *See* Docket No. 16 at 2.  In its reply brief, Plaintiff seeks an order prohibiting disclosure of "Mr.
6   Garff's 2012 appraisal, together with related documents and communications."  *See* Docket No. 36 at 8.
7   The reply brief also indicated that all such documents and communications were identified on a privilege
8   log supplied by Plaintiff.  *See id.*  At the hearing, however, Plaintiff's counsel changed course and
9   represented that he did not know what documents Mr. Garff possesses because he is not privy to the
10  contents of his files.  Hearing Tr. 12:07-12:08 p.m.  For that same reason, Plaintiff's counsel asserted that
11  providing a privilege log as to the documents possessed by Mr. Garff is not possible.  *See id.* at 12:08 p.m.[6]

12      The Court will not make a ruling based on speculation as to various documents Mr. Garff may
13  possess.  *Cf. McKenzie v. Walgreen Co.*, 2013 WL 211104, *4-5 (D. Nev. Jan. 18, 2013) (refusing to rule
14  on privilege arguments in motion to quash subpoena where privilege log failed to sufficiently describe the
15  withheld documents).  Instead, the parties' arguments focus on the 2012 appraisal, which consists of an
16  initial opinion of the value of the property on July 16, 2012, and an appraisal report with a July 6, 2012,
17  date of value delivered to Plaintiff's attorney on January 22, 2013.  *See* Miller Decl. at ¶ 8 (collectively, the
18  "2012 appraisal").  The Court limits its analysis to whether the 2012 appraisal is protected from disclosure
19  under Rule 26(b)(4)(D).

20

21

22

23

24      [6] A party generally lacks standing to move to quash a subpoena issued to a non-party.  *See, e.g.*, *Paws
25  Up Ranch, LLC v. Green*, 2013 WL 6184940, *2 (D. Nev. Nov. 22, 2013).  Some courts have provided an
    exception where the party contends subpoenaed documents are subject to a personal right or privilege.  *See
26  id.* (discussing competing case law).  Because neither party raises this standing issue, the Court assumes that
    Plaintiff has standing to bring the pending motion to quash.  As a corollary, however, the parties fail to
27  discuss how the privilege log requirements outlined in Rules 26(b)(5) and 45(e)(2) apply in the context of
28  a party asserting that documents held by a subpoenaed non-party are privileged or otherwise protected.

4

1    As such, this order is limited to resolving the core issue before it; namely, the discrete question of

2  whether the 2012 appraisal is protected from disclosure pursuant to Rule 26(b)(4)(D).[7]  To the extent

3  Plaintiff seeks any other relief, the motion to quash or modify the subpoena is **DENIED** without prejudice.

4       B.   Plaintiff's Initial Burden

5    The Court next turns to whether Plaintiff has met its initial burden of establishing that Mr. Garff

6  was retained in anticipation of litigation.[8]  Plaintiff submitted a declaration of its counsel that retained Mr.

7  Garff to perform the 2012 appraisal, indicating that Mr. Garff was hired by counsel to provide advice

8  concerning the possible enforcement of Plaintiff's rights and remedies under various loan documents.

9  More particularly, the declaration indicates that:

> In order to advise Wells Fargo concerning its possible remedies upon the maturity
> of the Loan, including, but not limited to, the filing of litigation, [Wells Fargo's
> supervising attorney] directed [another attorney] to retain the service of appraiser,
> Gordon Garff and his firm American Property of Nevada. [Counsel] sought the
> appraisal in order to advise Wells Fargo about the legal issues surrounding a

---

[7] Plaintiff's motion asserts without meaningful argument that "any communications Mr. Garff had with Wells Fargo and its counsel in his capacity as a consulting expert is protected by the attorney-client privilege." *See* Docket No. 16 at 1.  The moving papers focus on the work-product protections of Rule 26(b)(4)(D), and no legal authority was cited as to the existence of an attorney-client privilege.  In its reply brief, Plaintiff again failed to provide meaningful argument on that issue, but did cite to an unpublished opinion from this District indicating that confidential communications between a party's counsel and a non-testifying expert are privileged. *See* Docket No. 36 at 8 (citing *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, 2006 WL 3149362, *15 (D. Nev. Nov. 1, 2006)).  In its supplemental filing, Plaintiff expanded slightly on its argument by briefly discussing N.R.S. 49.095 and asserting that both communications "regarding" the 2012 appraisal and the communications "delivering" the 2012 appraisal are "obviously" privileged. *See* Docket No. 47 at 6-7.  While such arguments may be obvious to Plaintiff's counsel, they are not obvious to the Court.  Nonetheless, it does not appear that Plaintiff makes a privilege argument as to the 2012 appraisal itself that is distinct from the arguments already addressed herein.  To the extent Plaintiff was attempting to make an attorney-client privilege argument as to other documents or communications, such argument is not properly before the Court at this time.

[8] Rule 26(b)(4)(D) on its face is limited to experts hired in anticipation of litigation who "are not expected to be called as a witness at trial."  Defendants argue that Rule 26(b)(4)(D) cannot be used to protect the 2012 appraisal because Mr. Garff is a witness as to other issues involved in the case. *See* Docket No. 23 at 11.  The Court does not find this position persuasive. *See Synopsys, Inc. v. Ricoh Co.*, 2006 WL 2458721, *2 (N.D. Cal. Aug. 22, 2006) ("it is possible for a person to play a dual role in litigation, *i.e.*, serve as a fact witness and as a non-testifying expert"); *see also Sensormatic Elecs. Corp. v. WG Sec. Prods.*, 2006 U.S. Dist. Lexis 30591, *6 (E.D. Tex. May 11, 2006) ("one may simultaneously be a litigation expert with Rule 26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others").

1

> possible receivership action for the Property, bankruptcy, foreclosure of the Property, and an anticipated lawsuit against ANC Vista I, LLC and the Guarantors if a deficiency remained following a foreclosure of the Property.

2

3   Miller Decl. at ¶ 6.  Plaintiff's counsel retained Mr. Garff on June 20, 2012.  *Id.* at ¶ 7.  Mr. Garff provided

4   his initial opinion on July 16, 2012, and his appraisal report, with an appraisal date of July 6, 2012, was

5   delivered to Plaintiff's counsel several months later on January 22, 2013.  *See id.* at ¶¶ 7-8.  At the time Mr.

6   Garff was retained with respect to this appraisal, the loan had a maturity date of December 31, 2012.  *See*

7   *id.* at ¶ 5.  Plaintiff alleges that the loan agreement was breached when the loan was not paid in full by the

8   December 31, 2012, maturity date.  *See* Compl. ¶ 32.  On or about March 15, 2013, Wells Fargo

9   commenced a receivership action in state court.  *See Wells Fargo Bank, N.A. v. ANC Vista I, LLC*, Case

10  No. A-13-678422-C (opened March 15, 2013).  On January 21, 2014, the property was sold in a trustee's

11  sale.  *See, e.g.*, Compl. ¶ 37.  This deficiency action was then filed on May 28, 2014.  *See* Compl.

12       At the hearing, Plaintiff's counsel also represented that the engagement letter retaining Mr. Garff

13  with respect to the 2012 appraisal indicated that he was retained by counsel for the purpose of preparing

14  for litigation.  Hearing Tr. 12:10 p.m.  The Court ordered Plaintiff to submit for *in camera* review a copy

15  of that engagement letter, as well as the cover sheet that accompanied his transmission of the 2012 report.

16  *See* Docket No. 56.  The Court has now reviewed those documents.  Consistent with the representation of

17  counsel, the documents indicate that Mr. Garff was retained by counsel for the express purpose of preparing

18  for potential litigation.

19       By contrast, Defendants argue that Mr. Garff's retention with respect to the 2012 appraisal was not

20  in anticipation of litigation.  Defendants rely on the parties' past history and an email from a Wells Fargo

21  employee stating that "we" (*i.e.*, Wells Fargo and not Wells Fargo's attorney) ordered the appraisal.  *See*

22  Docket No. 23 at 5, 9-10; *see also* Docket No. 23-4.  Defendants argue that the facts demonstrate that "[t]he

23  valuation was prepared for the same or similar business purposes as it had been in previous years by the

24  same appraiser."  Docket No. 23 at 10.  Defendants also cast doubt on Plaintiff's position by asserting

25  vaguely that it is relevant whether Plaintiff used the value in its internal reporting and other non-litigation

26  uses, and point to Wells Fargo's withholding of all internal reports that refer to the disputed appraisal.  *See*

27  Docket No. 51 at 2-3.

28

Evaluating the totality of the circumstances, the Court finds that the declaration submitted by Plaintiff's counsel and the documents presented *in camera* are sufficient to establish that the 2012 appraisal was prepared in anticipation of litigation. *Cf. Bank of Am., N.A. v. Malibu Canyon Investors, LLC*, 2012 WL 112592, *1-2 (D. Nev. Jan. 12, 2012) (finding appraisal was prepared in anticipation of deficiency action). As such, Plaintiff has met its initial burden of establishing that the 2012 appraisal is subject to protection pursuant to Rule 26(b)(4)(D).

C.   Defendants' Burden

Having determined that Plaintiff carried its initial burden, the Court turns to whether Defendants carried their heavy burden of proving exceptional circumstances to overcome that protection. Defendants argue that the 2012 appraisal is discoverable because Mr. Garff's mental impressions and Plaintiff's knowledge of them are pivotal to their counterclaim, and that they have a compelling need for that discovery. *See* Docket No. 23 at 12-13. In particular, Defendants point to their counterclaim for breach of the covenant of good faith and fair dealing that turns on whether Plaintiff manufactured a deficiency action. The crux of that allegation is that Mr. Garff's appraisals showed no deficiency, so following receipt of his 2012 appraisal Plaintiff hired a different appraiser that would enable it to claim a deficiency when none existed. In essence, rather than asserting that Defendants are unable to obtain facts or opinions on the same subject on which Mr. Garff opined, Defendants argue that Mr. Garff's opinion itself (and Plaintiff's knowledge of that opinion) is the basis for their counterclaim that Plaintiff failed to act in good faith. Defendants also contend that "Garff is the only one who can corroborate that Wells Fargo knew at the time of maturity and when it commenced foreclosure that there was no deficiency." Docket No. 23 at 12.

In support of their position, Defendants rely primarily on case law in the bad faith insurance context that rejects objections to disclosure under Rule 26(b)(3). *See id.* (citing, *inter alia*, *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). Courts have found that opinion work product of an insurer can be discovered in that context when the opinion is at issue and the need for production is compelling. *See Holmgren*, 976 F.2d at 577. Such a determination is made on a case-by-case basis. *See id.*

Courts have applied the same analysis to find documents discoverable in other types of cases pursuant to the "exceptional circumstances" provision in Rule 26(b)(4)(D)(ii) when the work product is

directly at issue and the need for production is compelling.  *See, e.g.*, *Bio-Rad Labs, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 122, 124 (N.D. Cal. 1990) (finding exceptional circumstances under former Rule 26(b)(4)(B) for disclosure in patent litigation dispute, mirroring earlier analysis under Rule 26(b)(3)). Exceptional circumstances include instances in which the information is being sought to learn the extent of the opposing party's knowledge when knowledge is at issue and there is no other means by which to discover it.  *See, e.g.*, *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 299 (E.D. Pa. 1980) (finding exceptional circumstances compelled disclosure in asbestos litigation when the discovery of the non-testifying expert was directed to learning the opposing party's knowledge, which was "the very nub of plaintiff's contention that [defendant] had and knew of a duty to protect plaintiff but breached it nonetheless").  In *Faller v. Faller*, the defendants withheld a property appraisal on the grounds that it was created by a non-testifying expert.  *See* 2010 WL 3834865, *8 (D. Md. Sept. 28, 2010).  The plaintiffs argued that the withheld appraisal would show that the property was actually worth more than the sales price, that the defendants knew it was worth more than the sales price, and that the defendants breached, *inter alia*, their contractual duties of good faith and fair dealing in selling the property at below market value and "attempting to mislead CSF III into concluding that the property was worth less than CSF Jr. knew its value to be."  *Id.* at *10.  The plaintiffs argued that exceptional circumstances existed because "the concealed appraisal is the only evidence proving that when CSF Jr. claimed (and indeed testified) that he relied on [the property's] 'appraised value' to justify the fairness of the sale, he was in reality acting in bad faith and attempting to mislead CSF III."  *Id.* at *13.  The court emphatically agreed, concluding that:

> Retaining additional experts and conducting new appraisals will not remedy the situation for Plaintiffs. . . . Not only is it 'impracticable' for Plaintiffs to obtain what they seek through other methods, it is impossible.  In this case, there is only one report that matters because the information that Plaintiffs ultimately seek is the effect that the conclusion reached by that report had upon Defendant CSF Jr.'s reasoning in selling a piece of property owned by a company of which he was a fiduciary.

*Id.* at *16.

The Court finds these cases instructive and agrees with Defendants that "exceptional circumstances" exist such that disclosure of Mr. Garff's 2012 appraisal is proper.  Judge Mahan has already found that Defendants stated a claim for breach of the covenant of good faith and fair dealing in alleging that Plaintiff conducted itself in a manner designed to maximize a deficiency against Defendants by arbitrarily

1  disregarding the established opinion of value of the Property upon maturity and shopping for a lower

2  opinion of value from an outside appraiser.  *See* Docket No. 15 at 4 (refusing to dismiss Defendants'

3  counterclaim).  The crux of that counterclaim is that Plaintiff did not find Mr. Garff's 2012 appraisal to be

4  advantageous to it and, therefore, engaged in conduct that violated its duties of good faith and fair dealing.

5  Mr. Garff's 2012 appraisal is at the heart of the counterclaim.[9]  Moreover, the only way for Defendants to

6  ascertain that information is by obtaining the 2012 appraisal.  As such, the 2012 appraisal is a central issue

7  as to Defendants' counterclaim and they have shown that the need for its production is compelling.

8  **III.     CONCLUSION**

9         For the reasons discussed more fully above, the Court hereby **DENIES** Plaintiff's motion to quash

10  as it relates to Mr. Garff's 2012 appraisal.  No later than February 25, 2015, the 2012 appraisal shall

11  produced to Defendants.

12         IT IS SO ORDERED.

13         Dated: February 11, 2015

14

15                                                    _____
                                                      NANCY J. KOPPE
16                                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25  _____

26         [9] Plaintiff questions the significance of the 2012 appraisal, arguing, *inter alia*, that it is not relevant
    to the value received at a 2014 foreclosure.  *See* Docket No. 36 at 6-7.  As Judge Mahan's order makes clear,
27  however, the crux of Defendants' counterclaim is that Plaintiff arbitrarily disregarded the established opinion
    of value upon maturity and shopped for a lower appraisal to maximize a deficiency.  *See* Docket No. 15 at
28  4.

9