UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WELLS FARGO BANK, N.A., | Case No. 2:14-CV-840 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| ANC VISTA I, LLC, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Wells Fargo's motion to exclude or limit the testimony of defendants ANC Vista et al.'s expert witness, Keith Harper. (Doc. #80). Defendants filed a response in opposition (doc. #90), and plaintiff filed a reply. (Doc. #99). Also before the court is defendant's motion for partial summary judgment on liability and the amount of indebtedness. (Doc. #83). Defendants filed a response (doc. #89), and plaintiff filed a reply. (Doc. #105). Also before the court is plaintiff's motion for summary judgment on defendant's counterclaim. (Doc. #81). Defendants filed a response (doc. #95), and plaintiff filed a reply. (Doc. #110).

**I.  Background**

The instant action is familiar to the courts and the parties. Defendants are the borrowers and guarantors of a $26,275,000 loan from plaintiff, which is evidenced by the second amended and restated promissory note, secured by the deed of trust, dated February 3, 2010. (Doc. #84, Exh. 13). The deed of trust created a lien against certain real property commonly known as the University Park Apartments, which is located at 4259 S. Maryland Parkway, Las Vegas, Clark County, Nevada (the "property"). (Doc. #81, Exh. 3).

**James C. Mahan**
**U.S. District Judge**

On June 6, 2006, plaintiff and borrower entered into a loan agreement in which Wells Fargo agreed to loan borrower $21,000,000. (Doc. #84, Exh. 1). On or about February 3, 2010, the guarantors each separately executed an amended and restated repayment guaranty "unconditionally" guarantying to Wells Fargo the timely and proper payment of all amounts due and owing under the note and other loan documents. (Doc. #84, Exhs. 14-15). On May 18, 2011, plaintiff and borrower entered into a modification agreement. (Doc. #83).

The note, deed of trust, guarantees and all other documents evidencing the loan (the "loan documents") provided that, in the event of default, plaintiff would foreclose on the property and seek payment from defendants for any deficiency. (Doc. #81, Exhs. 3 and 13).

Upon its maturity on December 31, 2012, defendants failed to repay the loan. Plaintiff then foreclosed on the real property securing the loan. (Docs. # 81, 95). As of December 31, 2012, $24,156,106.47 was due and owing under the note, $24,075,000 in principal and $81,106.47 in interest at the note rate. (Doc. #83).

Prior to defendants' default, appraiser Gordon Garff had appraised the property for plaintiff on four occasions: Mr. Garff valued the property at (1) $37,150,000 in October 2009; (2) $38,500,000 in October 2010; and (3) $37,6000,000 in July 2012; and (4) $32,5000,000 in July 2013. (Doc. #95).

Following defendants' default, Wells Fargo engaged a different appraiser, Robert E. Dietrich, in March 2013 to appraise the property. (Doc. #81). The loan documents entitled plaintiff to obtain a new appraisal of the property, and plaintiff's internal policies and procedures required an appraisal with a date of value within six months before or six months after the date of the trustee's sale. (Doc. #81).

In an appraisal report dated June 25, 2013, Mr. Dietrich opined the fair market value of the property as of April 10, 2013 was $20,400,000. (Doc. #81). Mr. Dietrich conducted two additional appraisals of the property. In an appraisal report dated January 17, 2014, Mr. Dietrich opined the fair market value of the property as of December 16, 2013, was $19 million and on October 16, 2014, Mr. Dietrich opined the fair market value of the property as of January 21, 2014, was $19 million. (*Id.*)

On May 15, 2014, plaintiff, as owner by foreclosure, sold the property to the highest bidder and received just over $19.8 million. (*Id.*) The sale did not generate sufficient recovery to satisfy the entire balance of the loan and left a deficiency possibly as high as $5,835,000. (Doc. #1).

Plaintiff then filed a complaint against defendants for a deficiency judgment, alleging breach of the loan documents and guaranty agreements based on defendants' failure to pay the amount due under the loan. (Doc. #1). Defendants filed an answer and counterclaim for breach of the covenant of good faith and fair dealing. (Doc. #8).

**II. Legal Standard**

*a. Summary judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests.*, Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

**James C. Mahan**
**U.S. District Judge**

1  consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60
2  (1970).
3       If the moving party satisfies its initial burden, the burden then shifts to the opposing party
4  to establish that a genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith*
5  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
6  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
7  claimed factual
8  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).
10      However, the nonmoving party cannot avoid summary judgment by relying solely on
11 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
12 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
13 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
14 for trial. *See Celotex Corp.*, 477 U.S. at 324.
15      At summary judgment, a court's function is not to weigh the evidence and determine the
16 truth, but to determine whether there is a genuine issue for trial. See *Anderson v. Liberty Lobby,*
17 *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
18 inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is
19 merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at
20 249–50.
21     *b. Exclude expert witness*
22      An expert witness may testify if the expert's "specialized knowledge will assist the trier of
23 fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  A witness must
24 be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify
25 "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of
26 reliable principles and methods, and (3) the witness has applied the principles and methods reliably
27 to the facts of the case."  *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49
28 (1999).

**James C. Mahan**
**U.S. District Judge**

Expert testimony is liberally admitted under the federal rules. *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993) (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony") (citation and quotation marks omitted); *see also* Fed. R. Evid. 702 advisory committee notes to 2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "[T]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

In such cases, the trial court's gatekeeping role under *Daubert* involves probing the expert's knowledge and experience. *See id.* at 1018. "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10 (citation omitted).

**III.   Discussion**

*a. Motion to exclude expert witness*

Plaintiff moves to exclude the testimony, reports, and declarations of defendant's expert Keith Harper ("Harper"). (Doc. #80). Plaintiff argues that this evidence is unreliable, incapable of verification, and therefore is not helpful to the trier of fact. (Doc. #80). Plaintiff argues that "Mr. Harper failed to use actual comparable properties in applying his only valuation methodology, the sale comparison approach," and his methods are untested. (Doc. # 80).

In support of its motion, plaintiff cites numerous facts purporting to show that Harper's consideration and testing of dissimilar properties was inadequate. Plaintiff claims that Harper "base[d] his entire opinion on a comparison between the [p]roperty to four land sale transactions in no way involving student housing," did not employ "any methodology," and, therefore, any

**James C. Mahan**
**U.S. District Judge**

testimony comparing Harper's value conclusion to the twelve student housing transactions should be excluded. (Doc. #80).

While plaintiff's criticisms of Harper's methodology are lengthy, they do not warrant exclusion of his testimony. Plaintiff attacks are premature; they go to the weight of Harper's testimony rather than the determination of its admissibility. "[T]he test under *Daubert* is not the correctness of the experts conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010).

The Ninth Circuit "generally recognizes three appraisal methodologies in ascertaining fair market value: "(1) Comparable sales; (2) the income or capitalization of income; and (3) the reproduction cost at the time of taking, less depreciation." *United States v. 99.66 Acres of Land*, 970 F.2d 651, 655 (9th Cir. 1992). Indeed, "[t]he preferred means of determining that value is by referring to sales of comparable property." *United States v. 33.5 Acres of Land, More or Less, Okanogan Cty., State of Wash.*, 789 F.2d 1396, 1400 (9th Cir. 1986). Furthermore, as defendants note, the Uniform Standard of Professional Appraisal Practice ("USPAP") identifies the sales comparison approach to value as an accepted methodology. USPAP Standards Rule 1-4(a). Thus, defendant is correct in stating that the sales comparison approach is generally accepted in the community and subject to peer review. (Doc. #90).

The evidence shows that Harper employed a well-known methodology, performed tests to evaluate the property, and explained the basis for his findings. Disagreement over the choice of comparable sale properties and subsequent conclusions does not warrant exclusion of his testimony. The court will weigh the credibility of each witness in considering the instant motions. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (explaining that disputes over methodology or conclusions of an expert affect weight of testimony but do not preclude admissibility).

Based on the foregoing, the court denies the motion to exclude expert testimony.

b. *Indebtedness and liability*

Plaintiff filed a motion for partial summary judgment on liability and the amount of indebtedness. (Doc. #83). The court will address each in turn.

### i.   *Liability*

Plaintiff first argues that because there is no genuine issue of material fact that the borrower and guarantors breached the note and guarantees for failure to pay sums due and owing, it is entitled to summary judgment on the issue of liability. (Doc. #83). Indeed, defendants do not dispute that they are liable as borrowers and guarantors for any deficiency found by the court. (Doc. #89).

In a breach of contract action, Nevada law requires that the plaintiff establish (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (3) damage as a result of the breach. *See Saini v. Int'l Game Tech.,* 434 F.Supp.2d 913, 919–20 (D.Nev. 2006) (citing *Richardson v. Jones,* 1 Nev. 405, 405 (Nev. 1865)); *see also Anahuac Mgmt. v. Mazer,* No. 2:09–cv–01590–RLH–PAL, 2012 WL 1142714, at *3 (citing *Calloway v. City of Reno,* 116 Nev. 250, 993 P.2d 1259, 1263 (2000)). In addition, Nevada law provides that a guarantor is "liable on his own obligation, which is absolute and independent of the note itself." *Randono v. Turk,* 86 Nev. 123, 466 P.2d 218, 223 (1970).

It is undisputed in this case that the loan documents are valid and enforceable contracts. Pursuant to the note, the borrower agreed to repay "the outstanding principal of this Note, together will all accrued and unpaid interest" in full upon the maturity date. (Doc. #84, Exh. 13). The guarantors likewise executed guarantees and unconditionally agreed to the timely and proper payment of the amounts due and owing under the note. (Doc. #84, Exh. 14-17).

The borrower breached the note by failing to pay the loan in full by the note's December 31, 2012 maturity. (Doc. #84, Exhs. 3, 13). The guarantors breached the guarantees by failing to make payment to plaintiff following borrower's default. (Doc. #84, Exhs. 18-19). Accordingly, the court finds that the borrower breached the note when it failed to repay plaintiff on the date of maturity and the guarantors breached the guarantee when they failed to repay the debt upon the borrower's default. *See, e.g., Branch Banking & Trust Co. v. Pebble Creek Plaza, LLC,* 46 F. Supp. 3d 1061, 1076 (D. Nev. 2014) (granting summary judgment on liability as to a claim for a breach of guarantee, and permitting subsequent briefing on the fair market value at the time of the foreclosure sale); *CXA-10 Corp. v. Ford*, Case No. 2:12-CV-1554 JCM PAL, 2014 WL 429510,

James C. Mahan
U.S. District Judge

at *4 (D. Nev. Feb. 4, 2014) ("The court hereby enters summary judgment in favor of plaintiff as to liability. In accordance with the requirements of NRS 40.451 et seq, the court will hold a hearing to determine the deficiency amount."); *see also Bank of the W. v. Great Falls Ltd. P'ship*, Case No. 2:09-CV-388 JCM RJJ, 2012 WL 2415519, at *2 (D. Nev. Jun. 26, 2012).

Because there are no disputed issues of material fact, the court concludes that plaintiff is entitled to summary judgment on liability as to claim one for breach of contract and claim two for breach of guarantee.

### ii.   *Indebtedness*

However, plaintiff's argument for summary judgment as to the amount of indebtedness is less compelling. Defendants and plaintiff dispute the rate of interest applicable upon defendants' default. Pursuant to the terms of the note and 2011 modification, the loan accrued interest at the variable rate of LIBOR plus 3.25%, but in no event less than 4% per annum ("note rate"). (Doc. #84, Exhs. 13, 17).

Wells Fargo contends that upon an event of default, interest on the outstanding principal balance of the loan accrues at the note rate plus 5% – a minimum rate of 9% per annum ("default rate"). (*Id.*). Defendants argue that plaintiff should be equitably estopped from seeking the 9% default interest rate because, even after defendants defaulted, plaintiff consistently represented to the defendants that the interest had accrued at 4%. (Doc. #89).

Although plaintiff suggests that the interest rate automatically increases to 9% upon default, the terms of the note state only that that "[f]rom and after the Maturity Date, or such earlier date on which default exists under the Loan Agreement or under any other Loan Document . . . then *at the option of the Lender*, all sums under this Note shall bear interest at a rate per annum equal to five percent (5%) in excess of the interest rate otherwise accruing under this Note ("Default Rate")." (Doc. #84, Exh. 13) (emphasis added).

The note makes clear that while plaintiff certainly has the option to increase the rate upon default, plaintiff has not provided any evidence that it has done so. Indeed, plaintiff repeated the note language in its January 31, 2013, letter to defendants, which stated "the Lender reserves its right without further notice to assess the default rate of interest payable under the loan." (Doc. #84,

**James C. Mahan**
**U.S. District Judge**

- 8 -

Exh. 18). Yet, the amount of interest demanded in the letter makes clear that plaintiff did not exercise that option. Plaintiff sent correspondence to defendants on October 24, 2013, stating that the interest accrued in the amount of $605,300.00, and on March 27, 2014 stating that $846,450.00 had accrued. Both numbers are calculated at the contract rate of 4%, not the default rate of 9%. (Doc. #84, Exh. 19; #89, Exh. B). While at no point did plaintiff waive its right to collect upon the default interest rate, it also provided no evidence that it had exercised its right to do so.

Accordingly, there is a triable question of fact as to when plaintiff changed the interest rate according to the terms of the note and, therefore, the amount of interest that the borrower owes. Plaintiff's motion for summary judgment with regard to the amount of indebtedness is therefore denied, as is its demand for summary relief fixing the interest rate at the default rate of the note.

### c. *Breach of the covenant of good faith and fair dealing*

Defendants' counterclaim is based upon their contention that plaintiff "manufactured a deficiency where one did not exist in order to attempt to obtain double recovery." (Doc. #95). Plaintiff argues that defendant cannot establish elements three and four for their claim for breach of the covenant of good faith and fair dealing and their arguments fail as a matter of law. (Doc. #81). Defendants' counterclaim, plaintiff contends, is an attempt to convert the parties' dispute about fair market value into an independent claim by alleging that plaintiff manufactured a deficiency and shopped for appraisers in order to obtain "double recovery." (*Id.*)

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Cont., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted). A breach of the implied covenant of good faith and fair dealing occurs when the terms of a contract are complied with but one party to the contract deliberately contravenes the intention of the contract. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991)

To prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff must establish: (1) plaintiff and defendants were parties to a contract; (2) defendants owed a duty

James C. Mahan
U.S. District Judge

- 9 -

of good faith to the plaintiff; (3) defendants breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

The issue of good faith is typically a fact question under Nevada law. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1312 (1998); *Mitchell v. Bailey & Selover, Inc.*, 96 Nev. 147, 150 (1980). Whether conduct was "reasonable" under a given set of facts is generally an issue of fact for a jury or other fact-finder to decide. *Lee v. GNLV Corp.*, 117 Nev. 291, 296 (2001); *KMart Corp. v. Washington*, 109 Nev. 1180, 1189 (1993).

However, entry of summary judgment remains appropriate where there is no evidence in the record supporting a claimed fact. *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 461 (2007) (affirming summary judgment granted on a "question of fact" where the plaintiff cannot recover as a matter of law). "[T]o establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima facie case, such as duty, breach, causation, or damages, is 'clearly lacking as a matter of law.'" *Id.* (citing *Scialabba v. Brandise Constr. Co.,* 112 Nev. 965, 968 (1996)).

As a threshold matter, plaintiff cannot obtain double recovery. Wells Fargo sold the property securing the loan to a bona fide third party purchaser and received $19.8 million dollars for the property. Plaintiff's recovery is set at the price sold, and the only amount plaintiff may recover from defendants will be based on the difference between the amount owed and a fair market value determination.

A claim for the breach of good faith and fair dealing requires defendants to provide evidence that plaintiff acted in a manner that was unfaithful to the purpose of the contract. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). Defendants have not put forth any evidence that plaintiff improperly influenced Mr. Dietrich's appraisal or "shopped" for a lower appraisal. Mr. Saltman, a manager of borrower and a guarantor of the loan, testified he was "guessing" that plaintiff appraisal shopped for a lower price and did not know if plaintiff improperly influenced Mr. Dietrich. (Doc. #81, Exh. C). Defendants have not put forth any evidence showing that plaintiff misrepresented

**James C. Mahan**
**U.S. District Judge**

the value of the property, or manipulated any appraiser's opinion of value. Defendants have not met their burden of demonstrating a claim for breach of the duty of good faith and fair dealing.

Furthermore, defendants have not demonstrated damages beyond the filing of this deficiency suit. Filing a breach of contract claim is not enough to support a claim for breach of the covenant of good faith and fair dealing. *See, e.g.*, *Klein v. Freedom Strategic Partners*, LLC, 595 F. Supp. 2d 1152, 1161 (D. Nev. 2009) (dismissing claims for contractual and tortious breach of the implied covenant of good faith and fair dealing "[b]ecause the parties reasonably should expect the other side to file a lawsuit to resolve conflicts").

Plaintiff's motion for summary judgment is therefore granted in favor of the plaintiff.

**IV. Conclusion**

Accordingly,

IT IS FURTHER ORDERED that plaintiff's motion to exclude expert testimony, (doc. #80), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment on indebtedness and liability, (doc. #83), be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for summary judgment on defendant's counterclaim, (doc. #81), be, and the same hereby is, GRANTED.

DATED March 14, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**