1

2

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF NEVADA

3

4

5

WELLS FARGO BANK, N.A.,

          Plaintiff,

    vs.

Case No. 2:14-cv-00840-JCM-NJK

**FINDINGS OF FACT and CONCLUSIONS OF LAW**

6

7

8

9

10

11

ANC VISTA I, LLC, a Nevada limited liability company; AMERICAN NEVADA HOLDINGS, LLC, a Nevada limited liability company; MICHAEL SALTMAN and SONJA SALTMAN, husband and wife; MICHAEL SALTMAN and SONJA SALTMAN AS CO-TRUSTEES OF THE SALTMAN LIVING TRUST DATED MAY 29, 1997; G.C. INVESTMENTS, LLC, a Nevada limited liability company,

          Defendants.

12

13    These Findings of Fact and Conclusions of Law are based upon the stipulations of the

14    parties and the evidence presented at the trial of this matter from December 7, 2016 through

15    December 8, 2016.  Any and all findings of fact set forth herein shall constitute findings of fact

16    even if stated as conclusions of law, and any and all conclusions of law set forth herein constitute

17    conclusions of law even if stated as findings of fact.

18    **<u>FINDINGS OF FACT</u>**

19    The court hereby finds as follows:

20    1.    On June 6, 2006, Wells Fargo Bank, N.A. ("<u>Wells Fargo</u>") and ANC Vista I, LLC

21    ("<u>Borrower</u>") entered into a Loan Agreement in which Wells Fargo agreed to loan Borrower the

22    original principal amount of $21,000,000.  Pursuant to subsequent amendments and modifications,

23    the parties agreed to increase the maximum principal balance of the loan to $26,275,000 ("<u>Loan</u>").

24    2.    The original loan agreement was modified multiple times between June 2006 and

25    November 2009.

26    3.    The Loan is evidenced by, among other things, a Second Amended and Restated

27    Promissory Note Secured By Deed of Trust dated February 3, 2010 ("<u>Amended Note</u>"), executed

28    by Borrower in favor of Wells Fargo.

4.     On May 18, 2011, Wells Fargo and Borrower entered into a Modification Agreement ("2011 Modification").  Pursuant to the 2011 Modification, Borrower paid $2,200,000 to reduce the principal amount to $24,075,000.

5.     Pursuant to the terms of the Note and 2011 Modification, the Loan accrues interest at the variable rate of LIBOR plus 3.25%, but in no event less than 4% per annum ("Note Rate").

6.     Under the 2011 Modification, the Amended Note matured on December 31, 2012 ("Maturity").

7.     Failure to pay the Loan and amounts due under the Note in full upon Maturity was an event of default under the Amended Note.

8.     On or about February 3, 2010, Defendants Michael and Sonja Saltman, American Nevada Holdings, LLC, and the Saltman Living Trust dated 5/29/97 each separately executed an Amended and Restated Repayment Guaranty, guarantying to Wells Fargo the timely and proper payment of all amounts due and owing under the Amended Note and other loan documents.

9.     On or about February 3, 2010, G.C. Investments, LLC executed a Restated Repayment Guaranty, guarantying to Wells Fargo the timely and proper payment of all amounts due and owing under the Amended Note and other loan documents up to the amount of $3,284,375.00 (collectively with the Saltman, ANH, and Saltman Trust Amended and Restated Payment Guarantees, the "Guarantees").

10.    Repayment of the Loan and Borrower's performance of its obligations under the Amended Note were secured by a Deed of Trust with Assignment of Leases and Rents, Security Agreement and Fixture Filing (as subsequently modified or amended, "Deed of Trust") dated June 6, 2006, executed by Borrower as trustor in favor of Wells Fargo as beneficiary.

11.    The Deed of Trust created a lien against certain real property commonly known as the University Park Apartments and located at 4259 S. Maryland Parkway, Las Vegas, Clark County, Nevada (the "Property").

12.    On December 31, 2012, the date of Maturity, Borrower failed to repay the Loan.

13.    Borrower's failure to pay the Loan in full by the Amended Note's Maturity constituted a Default under the Amended Note and Deed of Trust.

14.     As of the December 31, 2012 Maturity, the Note Rate accrued at the rate of 4% per annum.

15.     Upon an event of default, the Amended Note permitted Wells Fargo, at its option, to charge interest on the outstanding principal balance of the Loan at an increased rate of interest equal to the Note Rate plus 5%—a minimum rate of 9% per annum ("Default Rate").

16.     Wells Fargo did not apply interest at the Default Rate in its system of record until September 30, 2014, and there was no evidence of any prior exercise of the option to charge default interest.  Wells Fargo is therefore not entitled to recover interest at the Default Rate until after September 30, 2014.

17.     As of the December 31, 2012 Maturity, the principal balance of the Loan was $24,075,000 and there was $81,106.47 in accrued but unpaid interest at the Note Rate.

18.     Following the breach of the loan documents, Wells Fargo recorded a Notice of Breach and Election to Sell Under Deed of Trust dated March 13, 2013.

19.     The trustee under the Deed of Trust recorded a Notice of Trustee's Sale on December 4, 2013.

20.     Subsequent to the Maturity, and prior to the trustee's sale, Wells Fargo received three payments totaling $261,400, consisting of: 1) $74,900 from Defendants on January 9, 2013; 2) $36,500 from the Court-appointed receiver on July 18, 2013; and 3) $150,000 from the Court-appointed receiver on September 6, 2013.  These payments were applied to interest.

21.     As of January 21, 2014, prior to the trustee's sale, the principal balance of the Loan was $24,075,000.

22.     From the December 31, 2012 Maturity to the January 21, 2014 Sale Date, $1,035,225.00 in Note Rate interest accrued.

23.     Wells Fargo incurred $79,639.50 in trustee's sale costs.

24.     As of January 21, 2014, before applying the fair market value of the Property, $25,009,570.97 was owed under the Amended Note calculated as follows: **$24,075,000** in principal; **$81,106.47** in Note Rate Interest accrued prior to 12/30/12; **$1,035,225.00** in Note Rate

Interest accrued from 12/31/12 to 1/21/14; **$79,639.50** in trustee's sale costs; less **$261,400** in payments.

25.     On January 21, 2014 (the "Sale Date"), the trustee under the Deed of Trust sold the Property pursuant to the power of sale under the Deed of Trust at a properly noticed and conducted trustee's sale.

26.     Wells Fargo was the successful bidder at the trustee's sale with a credit bid of $10,200,000.

27.     In determining the fair market value of the Property as of January 21, 2014, the Court considered the opinion of Wells Fargo's retained expert, Robert Dietrich, and the opinion of Defendants' retained expert, Keith Harper.  Mr. Dietrich concluded the value of the Property as of January 21, 2014 at $19,000,000.  Mr. Harper concluded the value of the Property as of January 21, 2014 at $32,180,000.

28.     The court did not fully adopt the testimony of either expert in determining the fair market value of the Property on January 21, 2014.

29.     Defendants sought to introduce the testimony of appraisers who had valued the Property prior to the Sale Date.  For the reasons more fully explained in the order granting Wells Fargo's motions *in limine* (ECF No. 152) and stated on the record at the trial of this matter, the court found the proposed testimony concerning appraisals conducted prior to the Sale Date to be cumulative and irrelevant because the proposed testimony reflected the value of the Property prior to the Sale Date.

30.     Some evidence of Wells Fargo's post-foreclosure sale of the Property was introduced at trial.  To the extent the court admitted such material into evidence, it later explained that the court gave the evidence of the post-foreclosure sale of the Property no weight because it reflected the value of the Property subsequent to the Sale Date.

31.     Based upon the entire record before the court and after considering all evidence presented, the court found the fair market value of the Property as of the January 21, 2014 trustee's sale to be $22,500,000.

32.     As of the trustee's sale on January 21, 2014, there was a deficiency owed under the Amended Note in the amount of $2,509,507.97, calculated as $25,009,570.97 reduced by the $22,500,000 fair market value of the Property.

33.     Wells Fargo is entitled to interest on the $2,509,507.97 deficiency at the 4% per annum Note Rate from January 21, 2014 to September 30, 2014, equaling $70,267.99.

34.     Wells Fargo is entitled to interest on the $2,509,507.97 deficiency at the 9% per annum Default Rate from October 1, 2014 until the date of judgment, which equals $526,382.51 through January 16, 2017, and $627.39 per diem thereafter.

35.     Wells Fargo is entitled to judgment against ANC Vista I, LLC, American Nevada Holdings, LLC, Michael Saltman and Sonja Saltman, husband and wife, and Michael Saltman and Sonja Saltman as Co-Trustees of the Saltman Living Trust Dated May 29, 1997, jointly and severally, in the amount of **$3,106,221.47**, consisting of the $2,509,507.97 deficiency, $70,267.99 in interest at 4% per annum from January 21, 2014 to September 30, 2014, and $526,382.51 in interest at 9% per annum from October 1, 2014 to January 16, 2017.  The post-judgment interest rate is to be determined at a later time, if necessary.

36.     Pursuant to the terms of the Amended Note and Guarantees, Wells Fargo is entitled to an award of its attorneys' fees and costs incurred as a consequence of Defendants' default under the Amended Note and Guarantees.

## **CONCLUSIONS OF LAW**

The court hereby concludes as follows:

1.     This court has subject matter jurisdiction pursuant to Article III, § 2 of the U.S. Constitution and 28 U.S.C. § 1332 because the parties are of diverse citizenship and more than $75,000 is in controversy.  Specifically, Wells Fargo is a citizen of South Dakota and Defendants are each citizens of Nevada.  Wells Fargo seeks damages in excess of $75,000.

2.     Pursuant to Chapter 40 of the Nevada Revised Statutes, this court has authority to award a deficiency judgment in favor of a creditor resulting from the unpaid balance on a promissory note which was secured by deed of trust property purchased by a creditor at a foreclosure sale.  *See*, *e.g.*, *Unruh v. Streight*, 615 P.2d 247 (Nev. 1980).

3.       As Wells Fargo purchased the secured property at the foreclosure bid pursuant to a credit bid, and the loan balance was unsatisfied with that credit bid, a deficiency judgment may be awarded subject to the limitations set forth in NRS 40.451 to NRS 40.463.  NRS 40.455(1) requires that "upon application of the judgment creditor or the beneficiary of the deed of trust . . . and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from . . . the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively."

4.       NRS 40.457(1) states "the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of foreclosure sale or trustee's sale."  At the hearing, the court determines the amount owed to the creditor in accordance with NRS 40.451 and NRS 40.459.

5.       NRS 40.451 defines "Indebtedness" as the "principal balance of the obligation secured by a mortgage or other lien on real property, together with all interest accrued and unpaid prior to the time of foreclosure sale, all costs and fees of such a sale, all advances made with respect to the property by the beneficiary, and all other amounts secured by the mortgage or other lien on the real property in favor of the person seeking the deficiency judgment."

6.       Once the "Indebtedness" is determined, a deficiency award is made by reducing the amount of the "Indebtedness" by whichever is greater of: (a) the fair market value of the property sold at the time of the sale; or (b) the amount for which the property was actually sold.

7.       The court can properly consider "all relevant evidence in determining the value of the property." *Unruh*, 615 P.2d at 249; *Tahoe Highlander v. Westside Fed. Sav. & Loan Ass'n*, 588 P.2d 1022, 1022–24 (Nev. 1979).

8.       Based on the Findings of Fact set forth above, this Court concludes as a matter of law that the hearing completed on December 8, 2016 complies with NRS 40.457.

## **ORDER**

Based upon the foregoing and previous orders of the court:

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is

entitled to its reasonable attorneys' fees and costs in an amount to be determined by this court. Plaintiff shall file an Application for Attorneys' Fees and a Statement of Costs within fourteen (14) days of the entry of this order.

DATED January 12, 2017.

UNITED STATES DISTRICT JUDGE